Honorable the judge of the United States Court of Appeals for the Fourth Circuit. Thank you and welcome to the Fourth Circuit. We'll now hear argument in our case of United States v. Cabrera and I'll simply remind you it is Friday afternoon and you are not the only case on our docket. So with that, Ms. Costner. Thank you, your honors. Good afternoon. My name is Lisa Costner and I practice here in the Middle District of North Carolina and I'm here today representing the appellant Jose Armando Cabrera. In 2018, Mr. Cabrera was indicted along with six co-defendants in a 15 count indictment. He was charged with conspiracy to distribute 500 grams or more of methamphetamine and in count 15 with possession with intent to distribute methamphetamine. Mr. Cabrera pled guilty to the conspiracy count count one and in the pre-sentence report which was prepared, Mr. Cabrera was given a two-level enhancement for possessing a firearm pursuant to 2D1.1B1. Mr. Cabrera filed an objection and the objection was overruled by the court at sentencing. In the brief that we filed, we raised one issue and that was whether the district court erred in applying the two-level increase pursuant to 2D1.1B1 for possession of the dangerous weapon. Is this the case, and maybe they run together, this case where the government essentially said below that it didn't apply? Yes. And then the court went a different way? Yes. And the court persuaded you otherwise, so to speak. And so now you have seen the light and now you follow where the court is going with it? Can you tell me why the government would have said from the initial step that it did not apply? I'm sorry, you're asking me this, your honor, not Mr. Joseph. I do have it a little mixed up. So that's the question, but that's why I saw him kind of turn around in his chair when I said it there. I should have recognized your faces and what the role is. But you are going to answer that question, at least from the perspective of the defendant. And why it does not apply. Yes, your honor, that is my argument as to why it does not apply. Please proceed. Yes, I did concur that at sentencing the government stated it did not apply. And then, as you see, the court engaged in a dialogue. The weapon that the district court found supported the enhancement was discovered in an unrelated incident that occurred in April of 2018, which took place in Warrick County, Georgia. And on that occasion, Mr. Cabrera was involved in a car accident. He apparently fell asleep at the wheel and crossed the lane. I think we got these facts good. We could probably go straight to it. What I'm trying to understand, at least from this, I know when you look at the guidelines here, this language is pretty direct. And it seems to me where we've gone with it is beyond at least the language of the guidelines, which I'm not saying you couldn't do, but the court has, there have been some cases to sort of extend it beyond being present at here, at this offense, particularly in a conspiracy case or in a better type situation. And so what, I mean, when I look at what happened in Georgia and what happened here, I mean, what was the district going and what is your argument there in terms of the connectivity or the relevance of that to the gun there is to here? My argument is there was no connectivity. And that's, yeah, I'm just trying to get you to go directly to it because I think we understand the facts. Well, and I think it's fact driven though, your honor, in that when you look at the facts of the case and what was discovered in terms of the search, you, you know, the weapon is in a book bag. There is marijuana in the book bag. There is money, a substantial sum of money in the book bag. There's this folder with the birth certificate, the passport, and this note that seems to have some type of delivery instruction, if that's the inference you want to give it. There's no date on the note. There's no time on the note. There was no evidence presented that meth was to be delivered at that address. No evidence was developed about that address as being a place where Mr. Cabrera went or delivered meth or picked up meth or anything like that. So my argument was that the government did not prove that Mr. Cabrera possessed this weapon on this date in connection with the conspiracy to distribute meth, the offense to which he pled guilty. There's nothing about that search of the car, anything that was found in the car, that I think gives that connection to the offense to which Mr. Cabrera was convicted. And that was our argument. That's all I was asking, was how do you connect up the facts? Because I think that's all this comes down to, whether or not we agree or disagree that it's enough. I mean, we could spend a whole lot of time talking about a lot of other stuff, except for cases that are like it. But beyond that, I just don't see much more to this case other than us making that decision. And I agree. You know, and I just I guess I would also highlight the fact that it's sentencing the government called to witnesses. And they were co-defendants, neither of whom testified that they ever saw Mr. Cabrera in possession of a firearm while he was engaged in the illegal activities that to which he had pled guilty. And so they had they not only did this, you know, in Georgia, I think failed to prove they failed to prove any connection. But through the witness testimony of these co-defendants, they could not put Mr. Cabrera in possession of a firearm in the course of this conspiracy. So it is our argument that the government failed to prove that connection and that the court should not have enhanced his sentence by that two levels. And unless there really are further questions of the court, we would just stand on our brief and ask the court to find that and to remand Mr. Cabrera's case back for resentencing. All right. Thank you. You've got some time on rebuttal. Mr. Joseph, we'll hear from you. Good afternoon, members of the court. I'm going to say good morning because it's always morning. I heard the question. Well, hold up just a second. I think these are 15 minute arguments and I think we need to start at 15 instead of 20. Go ahead, Mr. Joseph. Thank you, Judge Achebe. I heard Judge Wynn ask, well, why did the government- And I will say I apologize, Mr. Joseph. I didn't mean to give you a job away that easy. It was just an oversight on my part. But yeah, I do have that question. I see that the government did decide they didn't have enough. What was in the mind of the government in doing that is what I'd like to know. Well, that's a very good question. And I think the prosecutor that handled it did a very good job and she got convictions for all these individuals. I think that the focus was a little bit turned around though. The focus should have been on what did Cabrera know? What had he seen? And the questions that were asked in the district court of Mr. Steele and the other person, Mr. Joel Bueno-Lopez, was did you see Cabrera with a gun? And my position here today, if I can get to reference the record, is that guns were prevalent. Guns were everywhere in this conspiracy. So I can't answer the question about why we put on evidence that didn't lead anywhere. That's not a strong factor from my side. So I acknowledge that. But I asked the court to, I guess what I want to say is that in talking about why the court was correct, and I did say plain error in my brief, and I'm sorry, it's clearly erroneous standard, that if you look at JA279, when, if I can go ahead, at JA279 PSR72, when David Steele was debriefed, he said that he and Howard worked together to go pick up methamphetamine from Atlanta. That's at JA279. They often worked together to go to get methamphetamine from Atlanta. So I guess what I face of it, it looks as if everything happened in North Carolina, Virginia, West Virginia. But there were times, at least according to Mr. Steele, that they went to Atlanta to pick up methamphetamine. The other part of my argument is, and I can't give any further explanation as to, I mean, we had a good case in the PSR without even putting on evidence, I think. And I want to argue But I'm saying that if there was, I'm asking the court to look at Rule 52, Harmless Error. And I asked your... Counsel, let me ask you this. As I understand it, which may not be correct, under this enhancement, there's an initial burden on the government to show us possessing connection with drug activities. I'm not aware of the to the government's failure, if there was one, to meet that initial burden. And then the burden would have shifted to the defendant to avoid the enhancement by showing that the weapons link was clearly improbable. And as I read what transpired in the district court, that was the only subject that was discussed. So there was a burden on the defendant at that point to show clear improbability. Is that your understanding of the case? Well, you said it much better than I did. So yes. Well, but let me understand, at least when you look at this guideline, and this is where I say the courts look back to me, they've taken over. Judge Niemeyer actually wrote a wonderful opinion back in 1993 on the Facebook case, seems to sort of, I mean, I would agree with that case. I think it gets it right, but he said even that case was close. But when you're looking at a case like this, the first burden is to show that if this guideline says present, it doesn't say somewhere else, it says present. And then it say, then it shifts to the defendant, which makes sense in the guidelines that if a gun is present, then you give the defendant a chance to show the improbability of it being in, of a present gun. But when you separate it out and make it two different things, it can be present or it can be somewhere else. And then he's got to show us clearly improbable that to me, that's, I mean, that's completely shifting things around. I don't think the guidelines ever made it to go that far, and which is probably why the government went the way it in the first instance on this case. So when you deal with that first thing of the presence of a gun, yeah, that would be enough. Then it shifts it over to the defendant, but this is, you don't have a presence of a gun here. You have a gun in which you show, you're trying to show it is connected to it from another place. And now the clearly improbability sort of gets muddled in it because that's a lot to show. And when you look at the Judge Niebauer's case in Facebook, the connection was, you know, it was conspiracy or it was someone who was abetting. It was his cold person who had the gun and that sort of thing. That makes a lot of sense. But even Judge Niebauer called that a close case. So I don't, I think this pushes it. And I know Judge Tiller quite well, and I was really kind of surprised with it. I think it pushes it. Well, I would say this, Your Honor. His base of operations, Cabrera, was in Atlanta. That's where he was. He was 10 miles south of Atlanta, but I think everybody here in the case used Atlanta to mean the area. And he had this gun and he had $22,000 in cash. So he was protecting drug proceeds. Now maybe the question gets to be, okay, is that connected with this conspiracy or was that kind of some sort of side deal? And I think you can ask that question. Mr. Joseph? Yes. Isn't it different when we talk about presence of a gun? Is it different if we're talking about a conspiracy or we're talking about a substantive offense? When we think about presence, if I'm distributing narcotics under 841, the presence of the gun means I got it when I'm doing it. But when we think about a conspiracy, don't we think about presence as being different, that it's present? A conspiracy doesn't happen at a moment in time. A conspiracy is ongoing until there's withdrawal or its means are thwarted. And so don't we think of presence differently in the conspiracy context? Yes, Your Honor. And this happened in April 2018. And the conspiracy was from October 17 to August 18. And so the defendant admitted he was supplying people from Atlanta. He admitted he was supplying Jerry Chris Howard and David Steele and other people. And so I submit to you that there's an abundance of evidence here. I don't know that this is a closed case, but I understand there may be a difference of opinion. But I think it was very clear that Cabrera was in Atlanta and he was protecting drug proceeds. His market was here in North Carolina, Virginia, West Virginia. His base of operations, his supply was in Atlanta. There was no evidence of any kind adduced to show that he dealt drugs in Atlanta. None, none whatsoever. So I submit that what Judge Dilley did was accurate. But I also want to bring up one other thing if I could. Just briefly, I don't know if I'll be briefed or not, but if the court doesn't go with me on that, if the court says, well, I don't know. Well, I want to direct your attention to, and maybe I should have briefed it, but I didn't think it was a closed case. At JA 264, PSR 28, in September of 2017, Joel Bueno Lopez was driving a car in Cartersville and Cabrera was in the car, along with Cabrera's brother and another person. And they stopped the car and they found two firearms. Joel Bueno Lopez claimed one of them. Now, why is that important? When the defendant was arrested after his arrest at paragraph 64 in the PSR, at JA 276-77, when Cabrera was arrested in July of 18, he said, I originally came to North Carolina to supply Joel Bueno Lopez. And I was supplying him three kilograms of methamphetamine, 12 to 18 coms, from June to, from June, my phone's ringing, I'm sorry, from June to, from June of 17 to September 17. So, we have Cabrera in the car with Joel Bueno Lopez. He's admitted that he supplied cocaine, methamphetamine to him in September 17. He's in the car in September 17, and there's two guns there. So, I submit under harmless error that at that point Cabrera knew, he knew there were firearms in the conspiracy. And then you look further in the record, David Steele at PSR 33 and 44, he had firearms. He had 23 firearms. Billy Lee Robertson, this is all after September of 2017. Billy Lee Robertson had a firearm, paragraph 35. Thomas James Gamble had two firearms, one at paragraph 54, one at paragraph 59. What I submit to you is that even if you have questions about what happened in April of, in Atlanta, April 2018, that starting in September of 2017, that Mr. Cabrera knew. He was in a car with a man that he said, I'm supplying methamphetamine, $8,000 a pop, $8,000 a kilo. And, and, and so he's, that's foreseeable. It's foreseeable to him for the next people, David Steele, Robertson, Gamble. The last thing I want to say is that this wasn't an ordinary conspiracy. There was a lot of money in this one. I mean, I didn't realize it until I started getting ready for this hearing. At sentencing, the defendant stipulated, and this is at JA 147. At sentencing, he stipulated that he sold 148 kilograms of methamphetamine. When you multiply, I'm still surprised about this. When you multiply $8,000, which is what he charged for methamphetamine, that's paragraph 64 of the PSR, 148 kilograms comes to $1,184,000. That's a lot of money. So it's like this man wasn't a little too big dealer. Either he had guns or he was around guns. And maybe the reason people said they never saw him with a gun was it was understood. They all knew that they were carrying, they all knew they had guns. They were packing. And you would in a million-dollar enterprise. That's my argument. All right. Thank you very much, Mr. Joseph. Ms. Costner, you have some rebuttal time. Thank you, Your Honor. I first want to address Mr. Joseph's argument concerning this arrest in Kernersville and the guns that were found or attributed to Mr. Cabrera's co-defendants. First of all, with respect to the arrest in Kernersville, which is JA 264, paragraph 28, the firearm that was found that was attributed to Mr. Lopez was found in a gray backpack. So there's no evidence that Mr. Cabrera was aware of that firearm or that it was visible or that he had any knowledge of it whatsoever. The other firearm that was found that was attributable to Mr. Delgado, I believe the report said it was found on a seat. But again, there's no evidence as to where Mr. Cabrera was sitting in the car, no evidence as to where that firearm was before it was placed on the seat. It could be very well that Mr. Delgado had it in a jacket pocket or somewhere and put it down when the police arrived. So there's just no evidence at all with respect to that arrest that Mr. Cabrera had any knowledge of a firearm. And also, Mr. Lopez testified at sentencing. And certainly the government could have asked Mr. Lopez about that incident and asked whether he had, you know, they certainly asked him a lot about what he knew about Mr. Cabrera's possession of a firearm, but they never once asked Mr. Lopez about his possession of a firearm, whether he had a discussion with And on this particular occasion, this arrest, whether or not Mr. Cabrera knew or he had, you know, discussed or shown him that firearm, they had that opportunity. With respect to the other co-defendants, clearly Mr. Steele had a lot of firearms, these other co-defendants had firearms, no evidence at all that Mr. Cabrera was in the presence of them with their firearms. And again, in the same way that with Mr. Lopez, Mr. Steele testified at sentencing. And the government had opportunity to ask Mr. Steele about his contact with Mr. Cabrera, whether or not he showed Mr. Cabrera these 20-some firearms or even one of them. Again, there is nothing in the record, nothing before the court that is evidence of Mr. Cabrera's knowledge of firearms in the possession of his co-defendants. With respect to Judge Richardson's question about the conspiracy, certainly the case law does say there's a difference and this was an ongoing conspiracy and Mr. Lopez was charged in Georgia, I'm going now to the Georgia arrest on April 24th of 2018. So, you know, they can, certainly we can find that that was during the time period. But just because it was during the time period does not mean that we can just assume that the firearm was carried in connection with the offense of the distribute of conspiracy to distribute methamphetamine. And again, it goes back to the facts of the case. And I'm not, I don't want to do a whole rehash. I understand Judge Wynn, you know, that you all are very aware of the facts. But, you know, this was not, they didn't search the car because they were investigating Mr. Cabrera about his meth dealing or transportation or anything like that in Georgia. He had a car accident and there was a search as a result of that car accident. And when this car was searched, no meth was found on Mr. Cabrera in the car. Even this note, we don't know what it was about. We don't know. There's certainly the government could have investigated. There's no evidence that, about this residence, that it belonged or was related to any co-defendant, that it was a place where meth was taken, liver dropped off, or money. So just the fact that there was a lot of money in the conspiracy, and there was a gun found as a result of an automobile accident in April of 2018, I contend is not enough. And that the government has to prove more. They have to prove more of a connection of that firearm to the actual offense to which Mr. Cabrera was convicted. And that was the case. And this just is not enough without further evidence. Unless the court has any questions, I just respectfully repeat my request that the court find that the two-level enhancement did not apply and remand this case back for a new sentencing hearing. Thank you. All right. Hearing no further questions, we thank counsel for their arguments. As you know, at the Fourth Circuit, we would now be coming down to shake hands. Obviously, we can't do that. So consider this your virtual handshake and our appreciation for the arguments that you made in this case. So with that, we're going to take a very short recess and come back for our next case. Thank you. Thank you, Mr. Chief. This is the court to take a short recess.
judges: G. Steven Agee, James A. Wynn Jr., Julius N. Richardson